**IN THE UNITED STATES COURT OF INTERNATIONAL TRADE**

**BEFORE:  THE HONORABLE MARK A. BARNETT, CHIEF JUDGE**

| | |
|---|---|
| **TITAN TIRE CORPORATION,**<br><br>    **Plaintiff,**<br><br>        **v.**<br><br>**UNITED STATES,**<br><br>    **Defendant,**<br><br>        **and**<br><br>**BALKRISHNA INDUSTRIES LIMITED AND GOVERNMENT OF INDIA,**<br><br>    **Defendant-Intervenors.** | **Court No. 23-00233**<br><br>**NONCONFIDENTIAL VERSION** |

**BRIEF IN SUPPORT OF THE RULE 56.2 MOTION FOR JUDGMENT ON THE AGENCY RECORD OF PLAINTIFF TITAN TIRE CORPORATION**

Adam H. Gordon, Esq.
Jennifer M. Smith-Veluz, Esq.
Kieran O'Connell, Esq.
David B. Sessions, Esq.

**THE BRISTOL GROUP PLLC**
1707 L Street, NW
Suite 570
Washington, D.C. 20036
Email: jennifer.smith@bristolgrouplaw.com
Tel.: (202) 991-2705

*Counsel to Titan Tire Corporation*

Dated: September 9, 2024

NONCONFIDENTIAL VERSION

# TABLE OF CONTENTS

**Page**

RULE 56.2 STATEMENT ...........................................................................................1

   1.  The Administrative Determination Under Review ..........................................1

   2.  The Issues Presented and Reasons for Contesting the Administrative Determination .....1

   3.  Request for Court Order and Relief Sought...................................................4

JURISDICTION ........................................................................................................5

STANDARD OF REVIEW .........................................................................................5

STATEMENT OF FACTS ..........................................................................................5

   I.  The Investigation ........................................................................................5

   II.  This Review ................................................................................................7

SUMMARY OF ARGUMENT ...................................................................................10

ARGUMENT............................................................................................................11

   I.  Commerce's Determination That BKT Did Not Use or Benefit from the AAS Was Not Supported by Substantial Evidence or in Accordance with Law Because the GOI Did Not Conduct an Examination of BKT's Actual Data During the POR Under 19 C.F.R. § 351.519(a)(4)(ii)...........................................................................................11

   II.  BKT's *De Minimis* Subsidy Rate Was Not Supported by Substantial Evidence and Not in Accordance with Law Because It Did Not Account for BKT's Benefit from the AAS. ....................................................................................................................15

   III. The Subsidy Rate for the Non-Examined Companies Was Not Supported by Substantial Evidence and Not in Accordance with Law Because It Was Assigned Due to BKT's Improper *De Minimis* Subsidy Rate...........................................................16

CONCLUSION.........................................................................................................16

NONCONFIDENTIAL VERSION

# TABLE OF AUTHORITIES

**Cases**

*Guizhou Tyre Co. v. United States*, 348 F. Supp. 3d 1261 (Ct. Int'l Trade 2018) .................... 11

*Guizhou Tyre Co. v. United States*, 389 F. Supp. 3d 1315 (Ct. Int'l Trade 2019) .................... 11

*Hangzhou Metal Prods. Co. v. United States*, 628 F. Supp. 3d 1348 (Ct. Int'l Trade 2023) .... 12

*MTZ Polyfilms, Ltd v. United States*, 33 CIT 1575, 659 F. Supp. 2d 1303 (2009) ............. 11, 15

*Rubbermaid Commercial Prods., LLC v. United States*, 32 F. Supp. 3d 1331 (Ct. Int'l Trade 2014) ....................................................................................................................... 12

*Yama Ribbons & Bows Co. v. United States*, 606 F. Supp. 3d 1345 (Ct. Int'l Trade 2022) ...... 15

**Statutes**

19 U.S.C. § 1516a(b)(1)(B)(i) ......................................................................................... 5

19 U.S.C. § 1671d(c)(5)(A) .......................................................................................... 16

19 U.S.C. § 1677(5)(D)(ii) .............................................................................................. 5

19 U.S.C. § 1677(5)(E) ................................................................................................... 6

19 U.S.C. § 1677(5A)(A)–(B) ........................................................................................ 6

19 U.S.C. § 1677(6) ........................................................................................................ 4

19 U.S.C. § 1516a(a)(2)(A) ............................................................................................ 5

19 U.S.C. § 1516a(a)(2)(B)(iii) ...................................................................................... 5

28 U.S.C. § 1581(c) ........................................................................................................ 5

**Regulations**

19 C.F.R. § 351.106(c)(1) ............................................................................................. 15

19 C.F.R. § 351.519(a)(1)(ii) .......................................................................................... 2

19 C.F.R. § 351.519(a)(4) ............................................................................... 2, 5, 6, 14, 15

19 C.F.R. § 351.519(a)(4)(i) ........................................................................... 2, 7, 11, 14

19 C.F.R. § 351.519(a)(4)(ii) ................................................................................. passim

**NONCONFIDENTIAL VERSION**

19 C.F.R. § 351.525(a)......................................................................................... 4, 15

**Agency Determinations**

*Certain New Pneumatic Off-the-Road Tires from India and Sri Lanka: Amended Final Affirmative Countervailing Duty Determination for India and Countervailing Duty Orders*, 82 Fed. Reg. 12,556 (Dep't of Commerce Mar. 6, 2017)................................................... 6–7

*Certain New Pneumatic Off-the-Road Tires From India, the People's Republic of China, and Sri Lanka: Initiation of Countervailing Duty Investigations*, 81 Fed. Reg. 7067 (Dep't of Commerce Feb. 10, 2016)........................................................................................... 5

*Certain New Pneumatic Off-the-Road Tires From India: Final Results of Countervailing Duty Administrative Review; 2021*, 88 Fed. Reg. 68,101 (Dep't of Commerce Oct. 3, 2023), and accompanying Issues and Decision Memorandum........................................................ passim

*Certain New Pneumatic Off-the-Road Tires From India: Notice of Correction to the Final Results, and Amended Final Results of Countervailing Duty Administrative Review; 2021*, 88 Fed. Reg. 82,828 (Dep't of Commerce Nov. 27, 2023), and accompanying Issues and Decision Memorandum.................................................................................... passim

*Certain New Pneumatic Off-the-Road Tires From India: Preliminary Affirmative Countervailing Duty Determination, Preliminary Affirmative Critical Circumstances Determination, in Part, and Alignment of Final Determination With Final Antidumping Determination*, 81 Fed. Reg. 39,903 (Dep't of Commerce June 20, 2016), accompanying Decision Memorandum, ACCESS Barcode 3478365-01 ................................................ 2, 5, 6

*Countervailing Duty Investigation of Certain New Pneumatic Off-the-Road Tires From India: Final Affirmative Determination, and Final Affirmative Critical Circumstances Determination, in Part*, 82 Fed. Reg. 2946 (Dep't of Commerce Jan. 10, 2017), accompanying Issues and Decision Memorandum, ACCESS Barcode 3534161-01 2–3, 6, 14

*Initiation of Antidumping and Countervailing Duty Administrative Reviews*, 87 Fed. Reg. 29,280 (Dep't of Commerce May 13, 2022).............................................................. 7

## RULE 56.2 STATEMENT

### 1.  The Administrative Determination Under Review

The administrative determination under review is the final results issued by the U.S. Department of Commerce ("Commerce") in the administrative review of the countervailing duty ("CVD") order on certain new pneumatic off-the-road tires ("OTR tires") from India, for the period of January 1, 2021, through December 31, 2021, *Certain New Pneumatic Off-the-Road Tires From India: Final Results of Countervailing Duty Administrative Review; 2021*, 88 Fed. Reg. 68,101 (Dep't of Commerce Oct. 3, 2023), P.R. 268 ("*Final Results*"), and accompanying Issues and Decision Memorandum, P.R. 267 ("*Final IDM*"), as amended by *Certain New Pneumatic Off-the-Road Tires From India: Notice of Correction to the Final Results, and Amended Final Results of Countervailing Duty Administrative Review; 2021*, 88 Fed. Reg. 82,828 (Dep't of Commerce Nov. 27, 2023), P.R. 281 ("*Amended Final Results*"), and accompanying Issues and Decision Memorandum, P.R. 280 ("*Amended Final IDM*").[1]

### 2.  The Issues Presented and Reasons for Contesting the Administrative Determination

#### A.  Whether Commerce's determination that mandatory respondent Balkrishna Industries Ltd. ("BKT") did not use or benefit from the Advanced Authorization Scheme ("AAS") program during the period of review ("POR") is unsupported by substantial evidence or otherwise not in accordance with law?

**Yes.**  Commerce incorrectly determined that BKT did not benefit from import duty exemptions under the AAS because Commerce incorrectly found that the Government of India ("GOI") had carried out an examination of the inputs involved to confirm which inputs are

---

[1] Documents on the public administrative record in this proceeding are referred to in this brief by the abbreviation "P.R.", followed by the document number assigned to them in the administrative record filed with the Court, *i.e.*, "P.R. __".  Documents on the confidential record are referred to by the abbreviation "C.R.", followed by the document number, *i.e.*, "C.R. __".

consumed in the production of the exported product, and in what amounts, in accordance with 19 C.F.R. § 351.519(a)(4)(ii), with respect to BKT.

Generally, under 19 C.F.R. § 351.519(a)(1)(ii), "{i}n the case of an exemption of import charges upon export, a benefit exists to the extent that the exemption extends to inputs that are not consumed in the production of the exported product, making normal allowances for waste{.}" Under 19 C.F.R. § 351.519(a)(4), however, Commerce will consider the entire amount of an import duty to confer a benefit, unless Commerce determines that:

> (i)    The government in question has in place and applies a system or procedure to confirm which inputs are consumed in the production of the exported products and in what amounts, and the system or procedure is reasonable, effective for the purposes intended, and is based on generally accepted commercial practices in the country of export; or

> (ii)   If the government in question does not have a system or procedure in place, if the system or procedure is not reasonable, or if the system or procedure is instituted and considered reasonable, but is found not to be applied or not to be applied effectively, the government in question has carried out an examination of actual inputs involved to confirm which inputs are consumed in the production of the exported product, and in what amounts.

In the original investigation, Commerce found that GOI did not have a reasonable or effective system with respect to the AAS that was sufficient to satisfy the first prong, 19 C.F.R. § 351.519(a)(4)(i). *See Certain New Pneumatic Off-the-Road Tires From India: Preliminary Affirmative Countervailing Duty Determination, Preliminary Affirmative Critical Circumstances Determination, in Part, and Alignment of Final Determination With Final Antidumping Determination*, 81 Fed. Reg. 39,903 (Dep't of Commerce June 20, 2016), accompanying Decision Memorandum, ACCESS Barcode 3478365-01 ("*Inv. PDM*") at 13–15, *unchanged in relevant part in Countervailing Duty Investigation of Certain New Pneumatic Off-the-Road Tires From India: Final Affirmative Determination, and Final Affirmative Critical Circumstances*

*Determination, in Part*, 82 Fed. Reg. 2946 (Dep't of Commerce Jan. 10, 2017), accompanying

Issues and Decision Memorandum, ACCESS Barcode 3534161-01 ("*Inv. IDM*") at 14–15, 28–

30.  Commerce did not make any finding to the contrary in this review.  *See Final IDM* at 19,

P.R. 267.

      Instead, Commerce based its determination in the underlying review on the second prong,

19 C.F.R. § 351.519(a)(4)(ii), which requires that "the government in question has carried out an

examination of actual inputs involved to confirm which inputs are consumed in the production of

the exported product, and in what amounts."  *See id.* at 18–20.  Yet the record indicates that the

<u>only</u> action that the <u>GOI itself</u> actually took to examine BKT's data from the POR was a cursory

"verification" that the GOI conducted after the POR at only one of BKT's plants — for the sole

purpose of this review.  *See id.* at 19–20.  Such a cursory, *post hoc*, and incomplete "verification"

does not constitute substantial evidence that the government in question carried out an

examination of BKT's actual inputs and consumption during the POR under 19 C.F.R.

§ 351.519(a)(4)(ii).  Commerce's finding to the contrary eviscerates the requirements of the

regulation and invites significant gamesmanship in future CVD proceedings.

      The other documents that Commerce cited in support of its determination consisted of

information provided by BKT and outside accountants and engineers — <u>not</u> the GOI — and

documents that [           ].  *See Final IDM* at 18–19 & nn.62–63, 66–67, P.R. 267; C.R.

79–81; C.R. 116 at Ex. AAS-1; C.R. 119 at Exs. AAS-7, AAS-11; C.R. 209 at Ex. S-9.  Such

documents cannot constitute substantial evidence that the government in question carried out an

examination of BKT's actual inputs and consumption [        ] under 19 C.F.R.

§ 351.519(a)(4)(ii).

3

**B. Whether Commerce's determination to assign BKT a *de minimis* subsidy rate is unsupported by substantial evidence or otherwise not in accordance with law?**

**Yes.** Because Commerce improperly found that BKT did not use or benefit from the AAS, Commerce did not include the benefit from the AAS in BKT's total subsidy rate.[2] The Court should require Commerce to calculate BKT's subsidy rate from the AAS and include it in BKT's total subsidy rate on remand.

**C. Whether Commerce's determination of the subsidy rate for the companies that were not selected for individual examination ("non-examined companies") is unsupported by substantial evidence or otherwise not in accordance with law?**

**Yes.** In the *Amended Final Results*, Commerce assigned the non-examined companies a rate equal to ATC's subsidy rate because BKT's rate was *de minimis*. *See* 88 Fed. Reg. at 82,829, P.R. 281; *Amended Final IDM* 5, P.R. 280. The Court should require Commerce on remand to recalculate the subsidy rate for the non-examined companies as the weighted average of the subsidy rate for ATC and the subsidy rate for BKT, after it is corrected to include the AAS.

**3. Request for Court Order and Relief Sought**

Titan respectfully requests that the Court issue an order to:

(1) enter judgment in favor of Titan;

(2) hold that Commerce's determination that BKT did not use or benefit from the AAS program during the POR is unsupported by substantial evidence and otherwise not in accordance with law;

(3) hold that the subsidy rates that Commerce assigned to BKT and the non-examined companies are unsupported by substantial evidence and otherwise not in accordance with law;

---

[2] References to subsidy rates throughout this brief are to *ad valorem* net countervailable subsidy rates under 19 U.S.C. § 1677(6) and 19 C.F.R. § 351.525(a).

4

(4) remand this matter to Commerce to recalculate the subsidy rates for BKT and the non-examined companies and otherwise for disposition consistent with the order and opinion of the Court; and

(5) Provide any other such relief that this Court deems just and appropriate.

## JURISDICTION

The Court has jurisdiction over this action pursuant to 28 U.S.C. § 1581(c), as this action was commenced under 19 U.S.C. §§ 1516a(a)(2)(A) and (a)(2)(B)(iii).

## STANDARD OF REVIEW

In an appeal of a CVD determination by Commerce, "{t}he court shall hold unlawful any determination, finding, or conclusion found{} . . . to be unsupported by substantial evidence on the record, or otherwise not in accordance with law."  19 U.S.C. § 1516a(b)(1)(B)(i).

## STATEMENT OF FACTS

**I.    The Investigation**

In January 2016, Titan and a union petitioned Commerce for the imposition of CVDs on OTR tires from India.  *See Certain New Pneumatic Off-the-Road Tires From India, the People's Republic of China, and Sri Lanka: Initiation of Countervailing Duty Investigations*, 81 Fed. Reg. 7067 (Dep't of Commerce Feb. 10, 2016).  Commerce selected two mandatory respondents in the investigation:  ATC Tires Private Limited ("ATC") and BKT.  *See Inv. PDM* at 2.

Commerce properly found that the AAS was a countervailable export subsidy to BKT because:

> (1) a financial contribution, as defined under {19 U.S.C.
> § 1677(5)(D)(ii)}, is provided under the program, as the GOI exempts the respondents from payment of import duties that would otherwise be due;
> (2) the GOI does not have in place, and does not apply, a system that is reasonable and effective for the purposes intended in accordance with 19 CFR 351.519(a)(4), to confirm which inputs, and in what amounts, are consumed in the production of the exported products, making normal allowance for waste, nor did the GOI carry out an examination of actual

inputs involved to confirm which inputs are consumed in the production of the exported product, and in what amounts; thus the entire amount of the import duty deferral or exemption provided to the respondent constitutes a benefit under {19 U.S.C. § 1677(5)(E)}; and (3) this program is specific under {19 U.S.C. § 1677(5A)(A)–(B)} because it is contingent upon exportation.

*Id.* at 15, *unchanged in relevant part in Inv. IDM* at 14–15, 28–30.

The GOI failed to show at verification that the GOI's Norms Committee, the body responsible for reviewing the *ad hoc* norms used by BKT, has an adequate procedure in place under 19 C.F.R. § 351.519(a)(4) to ensure the *ad hoc* norms chosen by BKT reflect actual consumption, and the GOI confirmed that it does not regularly conduct physical audits for this program.  *See Inv. IDM* at 29.  Commerce stated:

> Without auditing or review, the new system is in effect an "honor system" involving self-policing.
> . . . .
> Furthermore, as explained by the GOI, the {Directorate General of Foreign Trade ("DGFT")}, the AA{S}'s primary regulatory authority, does not "conduct regular physical audits" of advance authorization holders to ensure that companies do not claim excessive credits or to ensure duty-free inputs are in fact consumed in the production of exports. Even though the DGFT has the ability to conduct "random," "physical checks," and excise authorities have the general authority to conduct audits of any importer (regardless of its status as an AA{S} license holder), GOI officials at verification could not discuss, or provide sample documentation, of a single "physical check" or audit.
>
> As such, the Department finds the AA{S} to be countervailable because the GOI has not shown it has a reasonable system in place to ensure duty free inputs are actually consumed in the production of exported products.

*Id.* at 29–30 (footnotes omitted).

Commerce calculated a subsidy rate of 4.03 percent for BKT for the AAS program, *see id.* at 14–15, which accounted for the vast majority of BKT's total subsidy rate of 5.36 percent, *see Certain New Pneumatic Off-the-Road Tires from India and Sri Lanka: Amended Final*

*Affirmative Countervailing Duty Determination for India and Countervailing Duty Orders*, 82

Fed. Reg. 12,556, 12,557 (Dep't of Commerce Mar. 6, 2017).

## II.    This Review

In March 2022, Titan requested an administrative review for POR 2021 of 23 companies

(including ATC and BKT).  *See* P.R. 2.  In May 2022, Commerce initiated the administrative

review for all 23 companies.  *See Initiation of Antidumping and Countervailing Duty*

*Administrative Reviews*, 87 Fed. Reg. 29,280, 29,283 (Dep't of Commerce May 13, 2022), P.R.

10.  Commerce selected ATC and BKT as the only two mandatory respondents for individual

examination.  *See* P.R. 21.

In this review, Commerce still did <u>not</u> find that the GOI had an adequate system under 19

C.F.R. § 351.519(a)(4)(i) with respect to the AAS.  *See Final IDM* at 19, P.R. 267.  Commerce,

however, found that BKT did not use or benefit from the AAS because Commerce "conclude{d}

that the GOI has carried out an examination of the inputs involved to confirm which inputs are

consumed in the production of the exported product, and in what amounts, in accordance with 19

CFR 351.519(a)(4)(ii), with respect to BKT."  *Id.* at 18, 20.  Commerce based this conclusion on

what it said was "substantial documentation on the record confirming the GOI's examination of

BKT."  *Id.* at 18.

The first such document that Commerce cited was "the GOI's verification report for its

verification of BKT's consumption ratios during the POR."  *Id.*  That so-called "verification"

was conducted by the GOI at BKT's request in 2022 — <u>after</u> the POR.  *See* P.R. 192 at 20.  The

"verification" was requested by BKT and conducted by the GOI <u>solely for the purposes of this</u>

<u>CVD administrative review</u>.  *See id.* at 20–21; P.R. 184 at 15–17; *see also* C.R. 77 ([

]).  As the GOI acknowledged:

> GOI on the request of BKT also undertook an additional verification and provided a "verification report" to provide additional assurance to USDOC and to request the USDOC to re-examine the countervailability of the AAS. . . . This additional verification was conducted at the request of BKT itself.   BKT volunteered for additional verification over and above the existing rules to get relief from the injury caused by the imposition of CVD by the USDOC.

P.R. 184 at 15–16; *accord id.* at 17.

The DGFT conducted the "verification" at only one of BKT's factories.  *See Final IDM* at 20, P.R. 267.  BKT has three OTR tire manufacturing plants — in Waluj, Rajasthan, and Gujarat.  *See* P.R. 64 at 2.  The DGFT only visited BKT's [        ] plant.  *See* C.R. 77.  The other two plants [                    ] in the "Verification Report."  *See id.*  BKT asserted in its rebuttal brief that the DGFT auditors had electronic access to the records of the other plants.  *See* P.R. 257 at 7.  Commerce found that assertion "appears plausible" because the "Verification Report" suggested "possible remote interactions between the auditors and BKT's accounting system and BKT's personnel."  *Final IDM* at 20 & n. 69, P.R. 267.  Yet [        ] in the text of the "Verification Report" indicates that the DGFT [

].  *See* C.R. 77.

The "Verification Report" is only three pages long.  *See Final IDM* at 19, P.R. 267.  It

[

].  C.R. 77 at 1–

2.  The DGFT also [

].  *See id.* at 2–3.  The DGFT [

]

*Id.* at 3.  The GOI refused Commerce's request to provide an unbracketed version of the

"Verification Report."  *See* P.R. 184 at 16.

The other documents that Commerce cited as "confirming the GOI's examination of

BKT" consist of:

(1) BKT's own calculations of its consumption ratios and determination of wastage rates,

(2) deficiency letters that the GOI issued to BKT in [

],

(3) documents from [                                    ] requiring the payment of
certain import duties, and

(4) reports of outside chartered engineers and accountants.

*See Final IDM* at 18–19 & nn.62–63, 65–67, P.R. 267; C.R. 79–81; C.R. 116 at Ex. AAS-1; C.R.

119 at Exs. AAS-7, AAS-11; C.R. 209 at Ex. S-9.  BKT [

], apparently

[                          ].  *See* C.R. 116 at Ex. AAS-3.

NONCONFIDENTIAL VERSION

Titan timely requested that Commerce conduct verification in this review. *See* P.R. 29.

Commerce decided not to conduct verification. *See Final IDM* at 8–9, P.R. 267.

In the *Final Results*, Commerce calculated a *de minimis* subsidy rate for BKT of 0.33

percent based on other programs. *See* 88 Fed. Reg. at 68,102, P.R. 268; P.R. 270. Commerce

calculated the subsidy rate for the non-examined companies as the weighted average of the

subsidy rates calculated for ATC and BKT. *See Final Results*, 88 Fed. Reg. at 68,102, P.R. 268.

In the *Amended Final Results*, Commerce corrected BKT's rate to 0.32 percent, which

Commerce clarified to be *de minimis*. *See* 88 Fed. Reg. at 82,829, P.R. 281. Because BKT's

rate was *de minimis*, Commerce assigned the non-examined companies a subsidy rate equal to

the subsidy rate calculated for ATC, which was 2.17 percent. *See id.*; *Amended Final IDM* at 5,

P.R. 280.

Titan timely appealed. *See* Summons, ECF No. 1; Compl., ECF No. 19.

## SUMMARY OF ARGUMENT

In this review, Commerce decided to accept an extraordinary coordinated action by BKT

and the GOI that was taken after the POR for the sole purpose of this review as sufficient to

eliminate BKT's liability for the AAS, an import duty exemption subsidy program that

Commerce had previously found to be countervailable in the investigation. As detailed below,

this action was the only action that the GOI itself reportedly took to examine BKT's actual data

from the POR. Commerce's decision violates the letter and spirit of the relevant regulation, 19

C.F.R. § 351.519(a)(4)(ii). Commerce has allowed BKT and the GOI to manipulate the system

and, in effect, has invited others to do so in the future, which threatens to eviscerate the

regulation. Commerce's decision also affected the calculations of the subsidy rates for BKT and

the non-examined companies in this review. This Court should reject Commerce's decision as

unsupported by substantial evidence and not in accordance with law and require Commerce to recalculate the subsidy rates accordingly.

## ARGUMENT

I.    **Commerce's Determination That BKT Did Not Use or Benefit from the AAS Was Not Supported by Substantial Evidence or in Accordance with Law Because the GOI Did Not Conduct an Examination of BKT's Actual Data During the POR Under 19 C.F.R. § 351.519(a)(4)(ii).**

Neither the U.S. Court of Appeals for the Federal Circuit nor this Court have specified what is sufficient to constitute "an examination of actual inputs involved to confirm which inputs are consumed in the production of the exported product, and in what amounts" by "the government in question" under 19 C.F.R. § 351.519(a)(4)(ii).  In the two cases that have addressed this regulation, this Court has upheld Commerce's findings that the governments in question did not actually carry out such examinations.  *See Guizhou Tyre Co. v. United States*, 389 F. Supp. 3d 1315, 1328 (Ct. Int'l Trade 2019) (upholding Commerce's finding that information provided by the respondent regarding a unit consumption verification and onsite inspection did not demonstrate that the government carried out such an examination); *MTZ Polyfilms, Ltd v. United States*, 33 CIT 1575, 1588, 659 F. Supp. 2d 1303, 1315 (2009) (upholding Commerce's finding "that the Government of India did not actually perform such an examination because it did not review all SIONs that were used in the PET film industry").

Nevertheless, the plain language of the regulation explicitly requires that the <u>government</u> itself must conduct the examination.  *See* 19 C.F.R. § 351.519(a)(4)(ii); *cf. Guizhou Tyre Co. v. United States*, 348 F. Supp. 3d 1261, 1278 (Ct. Int'l Trade 2018) (upholding Commerce's decision to focus on the government's responses, rather than the respondent's, in making an assessment under 19 C.F.R. § 351.519(a)(4)(i) "in light of the fact that its regulations specifically require that {Commerce} determine that the '*government* in question has in place and applies'

the appropriate procedure confirming which inputs are consumed in the production and in what amounts").  BKT's own calculations of its consumption ratios and determination of wastage rates and the reports of outside accountants and engineers cannot satisfy 19 C.F.R. § 351.519(a)(4)(ii) because they do not constitute an examination by "the government in question."  Commerce's reliance on those documents, *see Final IDM* at 18–19, P.R. 267, was thus misplaced.

In addition, the words "examination" and "actual" in 19 C.F.R. § 351.519(a)(4)(ii) connote both a substantive component and a temporal component.  "Examine" means "to inspect closely," "to test the condition of," or "to inquire into carefully."  *Examine*, Merriam-Webster Dictionary, https://www.merriam-webster.com/dictionary/examined (last visited Sept. 8, 2024).[3] "Actual" means "existing in fact or reality" or "existing or occurring at the time."  *Actual*, Merriam-Webster Dictionary, https://www.merriam-webster.com/dictionary/examined (last visited Sept. 8, 2024).  Consistent with these definitions, and common sense, an examination under 19 C.F.R. § 351.519(a)(4)(ii) must be substantively meaningful and must cover the actual inputs and consumption during the POR.

The deficiency letters and documents requiring the payment of import duties that Commerce cited, *see Final IDM* at 18–19 & nn.63, 66–67, P.R. 267, [                    ], *see* C.R. 79–81; C.R. 119 at Exs. AAS-7, AAS-11; C.R. 209 at Ex. S-9.  The deficiency letters also [     ] pertain to [                                              ].  *See* C.R. 80–81; C.R. 119 at Ex. AAS-11; C.R. 209 at Ex. S-9.  They do not reflect [

---

[3] This Court has previously cited the Merriam-Webster online dictionary for definitions of terms. *See, e.g.*, *Hangzhou Metal Prods. Co. v. United States*, 628 F. Supp. 3d 1348, 1355 (Ct. Int'l Trade 2023); *Rubbermaid Commercial Prods., LLC v. United States*, 32 F. Supp. 3d 1331, 1346 (Ct. Int'l Trade 2014).

] to confirm which inputs are consumed in the production of the exported product, and in what amounts. *See* C.R. 80–81; C.R. 119 at Ex. AAS-11; C.R. 209 at Ex. S-9. And in at least one instance, BKT [                                                                    ], apparently [                          ]. *See* C.R. 116 at Ex. AAS-3 ([


]). The deficiency letters and documents requiring the payment of import duties thus are not evidence that the GOI conducted a meaningful examination of BKT's actual inputs and consumption [                          ] under 19 C.F.R. § 351.519(a)(4)(ii).

The <u>only</u> document that Commerce cited that purports to be an examination by the GOI of BKT's actual data from the POR is the "Verification Report." *See Final IDM* at 18–19, P.R. 267. Yet that document does not reflect a meaningful examination by the GOI of BKT's actual inputs and consumption during the POR under 19 C.F.R. § 351.519(a)(4)(ii) for three reasons:

(1) The GOI did not conduct an actual examination during the POR at all. Instead, the GOI conducted the "verification" in 2022 — <u>after</u> the POR. *See* P.R. 192 at 20.

(2) The "verification" was incomplete, as the DGFT conducted the "verification" at only one of BKT's three factories. *See* P.R. 64 at 2; *Final IDM* at 20, P.R. 267. Although Commerce accepted BKT's assertion that DGFT auditors had electronic access to the records of the other plants was "plausible," *Final IDM* at 20 & n.68, P.R. 267 (citing P.R. 257 at 7), [       ] in the text of the "Verification Report" indicates that the DGFT [                                                    ], *see* C.R. 77.

(3) The "Verification Report" is merely a cursory three-page document that [


]. *See id.*

Such a *post hoc*, incomplete, and cursory "verification" cannot be and must not be considered an examination of BKT's actual inputs and consumption during the POR under 19 C.F.R. § 351.519(a)(4)(ii).

NONCONFIDENTIAL VERSION

Even worse, the "verification" was not part of the GOI's normal processes or procedures for the AAS program. *See Inv. IDM* at 29–30 (finding that the GOI does not regularly conduct audits and could not provide a single example of a prior audit). Rather, the record clearly establishes that the "verification" was requested by BKT and conducted by the GOI solely for the purposes of this CVD administrative review. *See* P.R. 192 at 20–21; P.R. 184 at 15–17; *see also* C.R. 77 ([



]).

In the absence of an adequate system under 19 C.F.R. § 351.519(a)(4)(i) or any other action by the GOI itself to examine BKT's actual data during the POR, BKT's import duty exemptions under the AAS were countervailable throughout the entirety of the POR. They only became non-countervailable due to Commerce's decision to accept an extraordinary, *post hoc*, incomplete, and cursory "verification" that was conducted for the sole and express purpose of enabling BKT to avoid CVD liability in this review. Commerce's decision is made even more troubling by the fact that Commerce itself refused to conduct any verification in this review. *See Final IDM* at 8–9, P.R. 267.

Commerce's decision effectively guts the requirement that the government must conduct an examination of actual inputs involved to confirm which inputs are consumed in the production of the exported product, and in what amounts, under 19 C.F.R. § 351.519(a)(4)(ii). Commerce has signaled that a foreign company and its government can cooperate to eliminate the potential for a subsidy rate under 19 C.F.R. § 351.519(a)(4) simply by arranging a nominal *post hoc* verification for purposes of a CVD investigation or review, as BKT and the GOI did here. This

is inconsistent with the letter and spirit of the regulation and can be expected to result in

significant gamesmanship in future CVD proceedings.

This Court must not allow that to happen. *See MTZ Polyfilms*, 33 CIT at 1588, 659 F.

Supp. 2d at 1315 (rejecting an argument that "would render 19 C.F.R. § 351.519(a)(4)

irrelevant"). Accordingly, this Court should hold that Commerce's findings that the GOI carried

out an examination of BKT under 19 C.F.R. § 351.519(a)(4)(ii) and that BKT did not use or

benefit from import duty exemptions under the AAS were not supported by substantial evidence

or otherwise in accordance with law.

## II.    BKT's *De Minimis* Subsidy Rate Was Not Supported by Substantial Evidence and Not in Accordance with Law Because It Did Not Account for BKT's Benefit from the AAS.

As Commerce improperly found that BKT did not use or benefit from the AAS for the

reasons detailed above, Commerce improperly failed to calculate or account for the subsidy rate

arising from BKT's benefit from the AAS program under 19 C.F.R. § 351.525(a). *See Final

IDM* at 18, 20, P.R. 267. Commerce calculates the total subsidy rate as the sum of the subsidy

rates for each countervailable subsidy program. *See Yama Ribbons & Bows Co. v. United States*,

606 F. Supp. 3d 1345, 1348 (Ct. Int'l Trade 2022). Commerce calculated BKT's total subsidy

rate — the sum of BKT's subsidy rates for programs other than the AAS — to be 0.32 percent.

*See* P.R. 270, *amended by Amended Final Results*, 88 Fed. Reg. at 82,829, P.R. 281. In

administrative reviews, Commerce treats any such rate that is less than 0.5 percent as *de minimis*.

*See* 19 C.F.R. § 351.106(c)(1). Commerce thus assigned BKT a *de minimis* rate in the *Amended

Final Results*. 88 Fed. Reg. at 82,829, P.R. 281. This *de minimis* rate was not supported by

substantial evidence and not in accordance with law because it did not account for BKT's benefit

from the AAS.  The Court should instruct Commerce on remand to calculate the subsidy rate for

BKT's benefit from the AAS and add it to BKT's total subsidy rate.

III.    **The Subsidy Rate for the Non-Examined Companies Was Not Supported by Substantial Evidence and Not in Accordance with Law Because It Was Assigned Due to BKT's Improper *De Minimis* Subsidy Rate.**

The Court should similarly instruct Commerce on remand to recalculate the subsidy rate

for the non-examined companies using BKT's corrected total subsidy rate.  Normally,

Commerce will calculate the rate for non-examined companies as the weighted average of the

subsidy rates calculated for each of the companies that was individually examined — excluding

rates that are zero, *de minimis*, or based solely on the facts available — consistent with the

methodology for calculating the all-others rate in investigations specified in 19 U.S.C.

§ 1671d(c)(5)(A).  *See Final Results*, 88 Fed. Reg. at 68,102, P.R. 268.  In the *Amended Final

Results*, Commerce assigned the non-examined companies a rate equal to ATC's subsidy rate

because BKT's rate was *de minimis*.  *See* 88 Fed. Reg. at 82,829, P.R. 281; *Amended Final IDM*

5, P.R. 280.  To the extent that BKT's rate is corrected to include its benefit from the AAS, and

any such correction results in an above-*de minimis* total rate, Commerce's exclusion of BKT's

rate from the calculation of the rate for the non-examined companies was also unsupported by

substantial evidence and not in accordance with law.  The Court should instruct Commerce on

remand to calculate the subsidy rate for the non-examined companies as the weighted average of

the subsidy rate for ATC and the corrected subsidy rate for BKT if that corrected rate is above-*de

minimis*.

**CONCLUSION**

For the reasons discussed above, this Court should hold that Commerce's determination

that BKT did not use or benefit from import duty exemptions under the AAS was not supported

by substantial evidence or otherwise in accordance with law and remand the matter to Commerce

with instructions to calculate a corrected subsidy rate for BKT that includes the benefit from

those exemptions and a corrected subsidy rate for the non-examined companies resulting from

the correction to BKT's rate.

Respectfully submitted,

*/s/ Jennifer M. Smith-Veluz*
Adam H. Gordon, Esq.
Jennifer M. Smith-Veluz, Esq.
Kieran O'Connell, Esq.
David B. Sessions, Esq.

**THE BRISTOL GROUP PLLC**
1707 L Street, NW
Suite 570
Washington, D.C. 20036

Email: jennifer.smith@bristolgrouplaw.com
Tel.: (202) 991-2705

*Counsel to Titan Tire Corporation*

Dated: September 9, 2024

## <u>CERTIFICATE OF COMPLIANCE</u>

Pursuant to Standard Chambers Procedure 2(B), the undersigned certifies that this brief complies with the word limitation requirement.  The word count for Brief in Support of the Rule 56.2 Motion for Judgment on the Agency Record of Plaintiff Titan Tire Corporation, as computed by The Bristol Group PLLC's word processing system Microsoft Word for Microsoft 365, is 5,117 words, less than the 12,000-word limit.  *See* Order, ECF No. 44.


*/s/ Jennifer M. Smith-Veluz*
Jennifer M. Smith-Veluz, Esq.
**THE BRISTOL GROUP PLLC**
*Counsel to Titan Tire Corporation*

Dated:  September 9, 2024