# IN THE UNITED STATES COURT OF INTERNATIONAL TRADE

BEFORE: THE HONORABLE MARK A. BARNETT, CHIEF JUDGE

|  |  |  |
|---|---|---|
| _____ ) | | |
| TITAN TIRE CORPORATION, ) | | |
| ) | | |
| Plaintiff, ) | | |
| ) | | |
| v. ) | Court No. 23-00233 | |
| ) | | |
| UNITED STATES, ) | | |
| ) | | |
| Defendant, ) | | |
| ) | | |
| and ) | | |
| ) | | |
| BALKRISHNA INDUSTRIES LIMITED ) | | |
| AND GOVERNMENT OF INDIA, ) | | |
| ) | | |
| Defendant-Intervenors. ) | | |
| ) | | |
| _____ ) | | |

## <u>ORDER</u>

Upon consideration of the motion for judgment upon the administrative record filed by plaintiff, responses thereto, plaintiff's reply, the administrative record, and all other pertinent papers, it is hereby

ORDERED that the plaintiff's motion is DENIED.

ORDERED that the Department of Commerce's determination is affirmed in all respects.

ORDERED that judgment is entered in favor of the United States.

Dated: _____          _____
                                                                        CHIEF JUDGE

**IN THE UNITED STATES COURT OF INTERNATIONAL TRADE**

BEFORE: THE HONORABLE MARK A. BARNETT, CHIEF JUDGE

| | | |
|---|---|---|
| TITAN TIRE CORPORATION, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Court No. 23-00233 |
| | ) | **NONCONFIDENTIAL VERSION** |
| UNITED STATES, | ) | **BPI ON PAGES 10, 11, 16, 17** |
| | ) | |
| Defendant, | ) | |
| | ) | |
| and | ) | |
| | ) | |
| BALKRISHNA INDUSTRIES LIMITED | ) | |
| AND GOVERNMENT OF INDIA, | ) | |
| | ) | |
| Defendant-Intervenors. | ) | |

**DEFENDANT'S RESPONSE TO PLAINTIFF'S
MOTION FOR JUDGMENT ON THE AGENCY RECORD**

BRIAN M. BOYNTON
Principal Deputy Assistant Attorney General

PATRICIA M. McCARTHY
Director

FRANKLIN E. WHITE, JR.
Assistant Director

OF COUNSEL:

DANIELLE COSSEY
Attorney
Office of the Chief Counsel
for Trade Enforcement & Compliance
U.S. Department of Commerce

BRITTNEY WELCH
Trial Attorney
Department of Justice
Civil Division
Commercial Litigation Branch
PO Box 480, Ben Franklin Station
Washington, D.C., 20044
Tel.: (201) 616-3753
Email: brittney.welch@usdoj.gov

January 6, 2024

# TABLE OF CONTENTS

STATEMENT PURSUANT TO RULE 56.2 ...................................................................1

    I.     Administrative Decision Under Review ....................................................1

    II.    Issues Presented For Review ....................................................................2

STATEMENT OF FACTS ......................................................................................2

    I.     Legal Framework For Exemption of Import Charges .................................2

    II.    Administrative Proceedings .....................................................................3

SUMMARY OF THE ARGUMENT .......................................................................8

ARGUMENT .........................................................................................................9

    I.     Standard of Review ................................................................................9

    II.    Titan Tire Failed To Exhaust Its Remedies In Relation To Its Argument That Commerce May Not Consider Documentation From Entities Other Than The GOI During Its Review ..................................................................10

    III.   Commerce's Determination That The AAS Does Not Confer A Benefit To BKT Is Supported By Substantial Evidence And In Accordance With Law .........................12

    IV.   Commerce Properly Excluded The AAS *Ad Valorem* Rate From BKT's Rate And Properly Calculated The Non-Selected Rate..............................................19

CONCLUSION......................................................................................................20

# TABLE OF AUTHORITIES

## Cases

*Al Tech Specialty Steel Corp. v. United States*,
  No. 4-114, 2004 WL 2011471, at *1504 (Ct. Int'l Trade 2004) .......................................... 19

*Boomerang Tube LLC v. United States*,
  856 F.3d 908, 912 (Fed. Cir. 2017) ................................................................................. 11

*Consol. Edison Co. of N.Y. v. NLRB.*,
  305 U.S. 197, 229 (1938) ............................................................................................... 10

*Consolo v. Federal Maritime Comm'n*,
  383 U.S. 607, 620 (1966) ............................................................................................... 10

*Corus Staal BV v. U.S.*,
  502 F.3d 1370, 1379 (Fed. Cir. 2007) ............................................................................ 11

*Fujian Lianfu Forestry Co., v. United States*,
  638 F. Supp. 2d 1325, 1349 (Ct. Int'l Trade 2009) ........................................................ 18

*Fujitsu Gen. Ltd. v. United States*,
  88 F.3d 1034, 1038 (Fed. Cir. 1996) ................................................................................ 9

*Gerber Food (Yunnan) Co. v. United States*,
  601 F. Supp. 2d 1370, 1380 (Ct. Int'l Trade 2009) ........................................................ 11

*GGB Bearing Tech. (Suzhou) Co. v. United States*,
  279 F. Supp. 3d 1233, 1241–42 (Ct. Int'l Trade 2017) ................................................... 13

*Guizhou Tyre Co., Ltd. v. United States*,
  348 F. Supp. 3d 1261, 1278 (Ct. Int'l Trade 2018) ........................................................ 14

*Guizhou Tyre Co., Ltd. v. United States*,
  389 F. Supp. 3d 1315 (Ct. Int'l Trade, 2019) ................................................................. 13

*Helmerich & Payne, Inc. v. United States*,
  24 F. Supp. 2d 304 (Ct. Int'l Trade 1998) ..................................................................... 13

*Mannesmannrohren-Weke AG v. United States*,
  77 F. Supp. 2d 1302 (Ct. Int'l Trade 1999) ................................................................... 13

*Micron Tech., Inc. v. United States*,
  117 F.3d 1386 (Fed. Cir. 1997) ...................................................................................... 10

iv

*MTZ Polyfilms, Ltd. v. United States*,
    659 F.Supp.2d 1303, 1588 (Ct. Int'l Trade, 2009)...........................................18, 19

*Nippon Steel Corp. v. United States*,
    458 F.3d 1345, 1352 (Fed. Cir. 2006) .................................................................10

*PAM, S.p.A. v. United States*,
    582 F.3d 1336, 1339 (Fed. Cir. 2009) .................................................................10

*Sandvik Steel Co. v. United States*,
    164 F.3d 596 (Fed. Cir. 1998) ............................................................................11

*Stanley Works (Langfang) Fastening Sys. Co. Ltd. v. United States*,
    279 F. Supp. 3d 1172 (Ct. Int'l Trade 2017) .....................................................11

*United States v. Eurodif S.A.*,
    555 U.S. 305, 316 n.6 (2009)...............................................................................9

## Statutes and Regulations

19 U.S.C. § 1671(a) ............................................................................................19

19 U.S.C. § 1671d(c)(5) ...................................................................................9, 20

19 U.S.C. § 1673d..................................................................................................8

19 U.S.C. § 1677...................................................................................................2

19 U.S.C. § 1677m(i)(3).....................................................................................8, 18

28 U.S.C. § 2637(d) .............................................................................................11

19 C.F.R. § 351.106(c)(1) ...................................................................................20

19 C.F.R. § 351.307 .............................................................................................17

19 C.F.R. § 351.519 ......................................................................................*passim*

## Administrative Authorities

*Certain New Pneumatic Off-the-Road Tires From India: Final Results of Countervailing Duty Administrative Review; 2021,*
    88 Fed. Reg. 68,101 (Dep't of Commerce Oct. 3, 2023) .......................................1

*Certain New Pneumatic Off-the-Road Tires from India: Preliminary Results of Countervailing Duty Administrative Review,*
    88 Fed. Reg. 20,125 (Dep't. of Commerce Apr. 5, 2023).....................................6

*Certain New Pneumatic Off-the-Road Tires From India: Notice of Correction to the Final Results, and Amended Final Results of Countervailing Duty Administrative Review; 2021,*
    88 Fed. Reg. 82,828 (Dep't of Commerce, Nov. 27, 2023) ..................................... 1, 7, 8, 20

*Certain New Pneumatic Off-the-Road Tires From India: Preliminary Affirmative Countervailing Duty Determination, Preliminary Affirmative Critical Circumstances Determination, in Part, and Alignment of Final Determination with Final Antidumping Determination ,*
    81 Fed. Reg. 39,903 (Dep't of Commerce June 20, 2016) .....................................................3

*Countervailing Duty Investigation of Certain New Pneumatic Off-the-Road Tires From India: Final Affirmative Determination, and Final Affirmative Critical Circumstances Determination, in Part*
    82 Fed. Reg. 2,946 (Dep't of Commerce, Jan. 10, 2017) .......................................................3

*Countervailing Duties,*
    63 Fed. Reg. 65348 (Dep't of Commerce, Nov. 25, 1998) ...................................................19

*Utility Scale Wind Towers From Malaysia: Preliminary Results and Partial Rescission of Countervailing Duty Administrative Review, 2021*
    88 Fed. Reg. 61,516 (Dep't of Commerce, Sept. 7, 2023) ...................................................14

*Utility Scale Wind Towers From Malaysia: Preliminary Results and Partial Rescission of Countervailing Duty Administrative Review, 2022,*
    89 Fed. Reg. 74,867 (Dep't of Commerce, Sept. 13, 2024) .................................................14

*Frozen Warmwater Shrimp From the Socialist Republic of Vietnam: Final Affirmative Countervailing Duty Determination,*
    89 Fed. Reg. 85,500 (Dep't of Commerce, Oct. 28, 2024) ..................................................14

Defendant, the United States, respectfully responds in opposition to the motion for judgment on the administrative record filed by plaintiff, Titan Tire Company (Titan Tire), challenging the Department of Commerce's (Commerce) final results of the 2021 administrative review of the countervailing duty (CVD) order on certain new pneumatic off-the-road tires from India.  Commerce's conclusion that Balkrishna Industries Limited (BKT), the mandatory respondent, did not receive a benefit under the Advanced Authorization Scheme (AAS), as well as the resulting exclusion of the program from BKT's rate, is supported by substantial evidence and otherwise in accordance with law.  Therefore, the Court should deny the motion and enter judgment for the Government.

## STATEMENT PURSUANT TO RULE 56.2

### I.    Administrative Decision Under Review

The administrative decision under review is *Certain New Pneumatic Off-the-Road Tires From India: Final Results of Countervailing Duty Administrative Review; 2021*, 88 Fed. Reg. 68,101 (Dep't of Commerce Oct. 3, 2023) (*Final Results*) (P.R. 268)[1] and accompanying Issues and Decision Memorandum for the Final Results of the Administrative Review of the Certain New Pneumatic Off-the-Road Tires from India; 2021 (Final IDM) (P.R. 267), as amended by *Certain New Pneumatic Off-the-Road Tires From India: Notice of Correction to the Final Results, and Amended Final Results of Countervailing Duty Administrative Review; 2021*, 88 Fed. Reg. 82,828 (Dep't of Commerce, Nov. 27, 2023) (*Amended Final Results*) (P.R. 281).

---

[1]  Citations to the public record (P.R.) and confidential record (C.R.) refer to the record of the countervailing duty review.

## II.    Issues Presented For Review

1.    Whether Titan Tire failed to exhaust its argument that documentation from sources other than the Government of India (GOI) may not be considered during Commerce's review.

2.    Whether Commerce's finding that the AAS does not provide a benefit to BKT, within the meaning of 19 C.F.R. 351.519(a)(1)(ii), is supported by substantial evidence and otherwise in accordance with law.

3.    Whether Commerce's exclusion of the AAS *ad valorem* rate from BKT, and subsequent calculation of the non-examined companies' final rate, is supported by substantial evidence and otherwise in accordance with law.

## STATEMENT OF FACTS

## I.    Legal Framework For Exemption Of Import Charges

A subsidy is countervailable when an authority has provided a financial contribution to a person, a benefit is thereby conferred, and the subsidy is specific.  *See* 19 U.S.C. § 1677(5)(D)-(E).  Under the statute, a benefit is normally conferred where there is a benefit to the recipient. *Id.* at § 1677(5)(E).  Commerce examines whether a benefit has been conferred "without regard to whether the subsidy is provided directly or indirectly on the manufacture, production, or export of merchandise{,}" and it "is not required to consider the effect of the subsidy in determining whether a subsidy exists{.}" *Id.* at § 1677(5)(C).

Section 351.519 of Commerce's regulations governs the calculation of benefit for programs that waive import duties on inputs used to produce merchandise for export.  Under this regulation, a benefit exists where a foreign government exempts import charges upon export "to the extent that the exemption extends to inputs that are not consumed in the production of the exported product, making normal allowances for waste{.}"  19 C.F.R. § 351.519(a)(1)(ii).  If

Commerce determines that a benefit is conferred, it will normally "consider the amount of the benefit to be the import charges that otherwise would have been paid on the inputs not consumed in the production of the exported product{.}"  *Id.* at § 351.519(a)(3)(ii).

Further, Commerce will consider the entire amount of the exemption to confer a benefit unless, under 19 C.F.R. § 351.519(a)(4)(i),

> {t}he government in question has in place and applies a system or procedure to confirm which inputs are consumed in the production of the exported products and in what amounts, and the system or procedure is reasonable, effective for the purposes intended, and is based on generally accepted commercial practices in the country of export{.}

Commerce considers whether the government in question "maintains controls adequate to ensure that any remission or exemption of import duties does not extend to duties on inputs not consumed in production for export."  *GGB Bearing Tech. (Suzhou) Co. v. United States*, 279 F. Supp. 3d 1233, 1241-42 (Ct. Int'l Trade 2017).  Alternatively, if the foreign government does not have a reasonable and effective system or procedure in place under section (i), but "the government in question has carried out an examination of actual inputs involved to confirm which inputs are consumed in the production of the exported product, and in what amounts{,}" under section (ii), then Commerce will also find the import exemption does not confer a benefit. 19 C.F.R. § 351.519(a)(4)(ii).

## II.    Administrative Proceedings

Commerce published the final determination in the countervailing duty investigation of Off-the-Road Tires from India on January 10, 2017.  *Countervailing Duty Investigation of Certain New Pneumatic Off-the-Road Tires From India: Final Affirmative Determination, and Final Affirmative Critical Circumstances Determination, in Part*, 82 Fed. Reg. 2,946 (Dep't of Commerce Jan. 10, 2017) (*Final Investigation*), and accompanying Issues and Decision Memorandum for the Final Determination in the Countervailing Duty Investigation of Certain

NONCONFIDENTIAL VERSION

New Pneumatic Off-the-Road Tires from India (Dep't of Commerce January 3, 2017) (Investigation IDM).  In the investigation, Investigation IDM at 28-30, Commerce analyzed whether the AAS,[2] a program in which "exporters may import, duty free, specified quantities of materials required to manufacture products that are subsequently exported" provides a benefit under 19 C.F.R. § 351.519(a)(1)(ii) as an exemption of import charges.  *Certain New Pneumatic Off-the-Road Tires From India: Preliminary Affirmative Countervailing Duty Determination, Preliminary Affirmative Critical Circumstances Determination, in Part, and Alignment of Final Determination with Final Antidumping Determination*, 81 Fed. Reg. 39,903 (Dep't of Commerce June 20, 2016) and accompanying Determination Memorandum for the Preliminary Affirmative Determination: Countervailing Duty Investigation of Certain New Pneumatic Off-the-Road Tires from India at 13 (Dep't of Commerce June 13, 2016).

Commerce determined that a benefit existed for the AAS because the GOI did not have a reasonable and effective system in place to confirm which inputs are consumed and in what amounts under 19 C.F.R. § 351.519(a)(4)(i), nor did it carry out an examination of actual inputs involved under 19 C.F.R. § 351.519(a)(4)(ii).  Investigation IDM at 23 ("the GOI does not have in place, and does not apply, a system that is reasonable and effective for the purposes intended in accordance with 19 C.F.R. § 351.519(a)(4), to confirm which inputs, and in what amounts, are consumed in the production of the exported products, making normal allowance for waste{,}" "{n}or did the GOI carry out an examination of actual inputs involved to confirm which inputs are consumed in the production of the exported product, and in what amounts.").  Thus,

---

[2]  The Advance Authorization Scheme was abbreviated to AAP in the Investigation and AAS in this review to reflect minor variations in the administration of the program.  This response uses the AAS abbreviation to refer to both.

Commerce countervailed the program and calculated a 4.03 percent *ad valorem* CVD rate for the AAS. *Final Investigation* at 2,947; Investigation IDM at 14-15.

On May 9, 2022, Commerce initiated an administrative review of the order for the period of January 1, 2021 to December 31, 2021. Initiation of Antidumping and Countervailing Duty Administrative Reviews, 87 Fed. Reg. 29,280 (Dep't of Commerce May 13, 2022) (P.R. 10). Commerce selected ATC Tires Pvt. Ltd. (ATC)[3] and BKT as the mandatory respondents. Administrative Review of the Countervailing Duty Order on Certain New Pneumatic Off-The-Road Tires from India: Selection of Respondents for Individual Examination (Dep't of Commerce August 5, 2022) (P.R. 21, C.R. 6). Titan Tire requested that Commerce conduct verification on August 17, 2022. Certain New Pneumatic Off-the-Road Tires from India: Request for Verification (August 17, 2022) (P.R. 29).

BKT filed its responses to Commerce's questionnaires relating to the AAS on October 14, 2022 and February 17, 2023. *See Certain New Pneumatic Off-The-Road Tires From India*: Balkrishna Industries Limited's Initial Section III Questionnaire Response (Part II) (October 14, 2022) (Section III Questionnaire Response) (P.R. 103-04, C.R. 116-120, 124-125); *Certain New Pneumatic Off-The-Road Tires From India*: Balkrishna Industries Limited's First Supplemental Questionnaire Response and Response to New Subsidy Allegations (February 16, 2023) (First Supplemental Questionnaire Response) (P.R. 192-194, C.R. 205-213). In BKT's questionnaire responses, it explained that it uses the *ad hoc* method of reporting for the AAS program, which is a system in which applicants apply for advance authorization based on "their own consumption information" rather than the standard industry-wide generic inputs. *See* Section III Questionnaire Response (P.R. 103 at 20). BKT also reported that an independent Chartered

---

[3] ATC Tires Pvt. Ltd.'s non-use of the AAS program was not challenged.

Accountant examined the import norms as part of the AAS licensing process and additionally

that the GOI, through the Directorate General of Foreign Trade, conducted verification of BKT's

factory at its request on September 17, 2022, but that BKT does not have access to the report.

*See id*. at 29, 32-33.  As part of its responses, BKT submitted its certified production and

consumption ratios and wastage, payment of duties, a sample deficiency letter at the stage of

redemption, and another past deficiency letter.  *See id*. at Exhibit List.

       The GOI responded to Commerce's questionnaires on October 13, 2022 and February 16,

2023.  *See* Response to Countervailing Duty Questionnaire on behalf of Government of India

(GOI Initial Response) (P.R. 70-96, C.R. 77-87); GOI Supplemental Questionnaire Response

(P.R. 170-191, C.R. 187-194).  In these responses, the GOI provided the verification report from

its examination of BKT's inputs for the AAS and explained that the report is not public as it is an

internal government document.  *See* CVD Administrative Review of Off the Road Tires from

India (GOI Verification Report) (P.R. 81, C.R. 77); GOI Supplemental Questionnaire Response

(P.R. 184 at 16).  Among other relevant documents, the GOI also provided bills for the

repayment of excess duty exemptions and deficiency letters.  *See* GOI Initial Response (P.R. 83-

85, C.R. 78-81).

       On April 5, 2023, Commerce published the preliminary results of its administrative

review and invited parties to comment.  *Certain New Pneumatic Off-the-Road Tires from India:*

*Preliminary Results of Countervailing Duty Administrative Review; 2021*, 88 Fed. Reg. 20,125

(Dep't. of Commerce Apr. 5, 2023) (*Preliminary Decision*) (P.R. 233), and accompanying

Decision Memorandum for the Preliminary Results of the Countervailing Duty Administrative

Review, Off-the-Road Tires from India; 2021 (Dep't of Commerce March 30, 2023) (PDM)

(P.R. 229).  In contrast to the investigation where BKT had not previously disclosed its product-

specific consumption ratios, Commerce found that "substantial information documenting audited and detailed calculations of the amounts consumed of each imported input" were on the record of this review and that the GOI "carried out an examination of the actual inputs involved to confirm which inputs are consumed in the production of the exported product, and in what amounts, in accordance with 19 C.F.R. § 351.519(a)(4)(ii)." PDM at 19.

On May 24 and 25, 2023, respectively, BKT and Titan Tire submitted their administrative case briefs to Commerce. *See Certain Pneumatic Off-The-Road Tires From India*: Balkrishna Industries Limited's Case Brief (BKT Case Brief) (P.R. 247); and *Off-the-Road Tires From India*: Case Brief of Titan Tire Corporation (Titan Tire Case Brief) (P.R. 250, C.R. 251). On June 9, 2023, both parties submitted rebuttal briefs. *See Certain New Pneumatic Off-The-Road Tires From India*: Balkrishna Industries Limited's Rebuttal Brief (BKT Rebuttal Brief) (P.R. 257, C.R. 252); and *Certain New Pneumatic Off-the-Road Tires From India*: Rebuttal Brief of Titan Tire Corporation (P.R. 261, C.R. 254). In relevant part, Titan Tire argued the GOI's verification cannot be considered an examination of actual inputs because it was conducted solely for the purposes of the CVD administrative review, was not part of the normal processes or procedures, and was incomplete and unavailable to the company under review. Titan Tire Case Brief at 21-26 (P.R. 250, C.R. 251).

Commerce published the *Amended Final Results* on October 3, 2023. (P.R. 281). Commerce found that, although the GOI did not have a reasonable and effective monitoring system under 19 C.F.R. § 351.519(a)(4)(i), there is evidence on the record "demonstrating the GOI has scrutinized BKT's information in a manner consistent with {subsection (ii)}" and therefore "BKT did not benefit from the program during the POR{.}" Final IDM at 20 (P.R. 267). Commerce cited the following as documentation "confirming the GOI's examination of

BKT": (1) "the GOI's verification report for its verification of BKT's consumption ratios"
(2) "the calculations of the ratios themselves" (3) "examples of deficiency letters issued by the
GOI and documents requiring the payment of duties for imports that were not consumed in
exported products" and, (4) "numerous other documents relevant to the examination, including
the reports of chartered engineers and accountants that conduct additional audits{.}"  *Id*. at 18.

Additionally, Commerce responded to Titan Tire's appeal for verification by Commerce
of the information submitted by BKT and the GOI by explaining that "this is the first
administrative review that Commerce has conducted since the investigation" and that verification
is not required unless Commerce did not conduct verification for the two immediately preceding
reviews under 19 U.S.C. § 1677m(i)(3).  *See id*. at 7-9.

On November 27, 2023, Commerce published a correction to the *Final Results* to correct
BKT's rate due to errors in unrelated programs as well as to clarify that the 0.32 percent rate
calculated for BKT was *de minimis*.  *See Amended Final Results* (P.R. 281); and Analysis of
Ministerial Error Allegation (Ministerial Error Analysis) (Dep't of Commerce November 17,
2023) (P.R. 280).  Commerce explained that it applied ATC's rate of 2.17 percent to the non-
examined companies under 19 U.S.C. § 1673d because BKT's rate is *de minimus*.  *See id*. at 4

## SUMMARY OF THE ARGUMENT

Commerce's finding that the GOI conducted an examination of actual inputs within the
meaning of 19 C.F.R. § 351.519(a)(4)(ii) is supported by substantial evidence and otherwise in
accordance with the law.  Titan Tire's arguments to the contrary are unavailing.

To begin, Titan Tire failed to exhaust its administrative remedies with respect to the
argument that the documents Commerce relied upon during its review must be sourced from the
GOI.  Titan Tire did not raise this specific argument in its administrative case brief, and none of

the exceptions to the exhaustion requirement apply. Commerce's finding is supported by substantial evidence in the form of a verification report that included methodology and findings to support that the GOI conducted an examination of BKT's actual inputs. Therefore, in accordance with 19 C.F.R. § 351.519(a)(4)(ii), Commerce properly determined that the AAS did not confer a countervailable benefit on BKT during the period of review. Titan Tire's attempt to impose additional requirements on Commerce's review that are not found in the regulation is legally unsupportable and must fail.

Finally, because Commerce lawfully determined that BKT did not receive a countervailable benefit under the AAS, Commerce appropriately excluded that program from BKT's subsidy rate. And because ATC's rate was the sole individually examined rate that was not zero, *de minimis*, or based entirely on facts available, Commerce appropriately assigned that rate to the non-selected respondents in accordance with 19 U.S.C. § 1671d(c)(5)(A).

**ARGUMENT**

## I.    Standard Of Review

In reviewing Commerce's CVD decisions, the Court "must sustain 'any determination, finding or conclusion found' by Commerce unless it is 'unsupported by substantial evidence on the record, or otherwise not in accordance with {the} law.'" *Fujitsu Gen. Ltd. v. United States*, 88 F.3d 1034, 1038 (Fed. Cir. 1996) (quoting 19 U.S.C. § 1516a(b)(1)(B)); *see United States v. Eurodif S.A.*, 555 U.S. 305, 316 n.6 (2009) ("The specific factual findings on which {Commerce} relies in applying its interpretation are conclusive unless unsupported by substantial evidence.").

A party challenging a determination under the substantial evidence standard "has chosen a course with a high barrier to reversal." *Nippon Steel Corp. v. United States*, 458 F.3d 1345, 1352 (Fed. Cir. 2006) (citation omitted) (*Nippon Steel*). "'Substantial evidence' is defined as

9

'more than a mere scintilla' or 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *PAM, S.p.A. v. United States*, 582 F.3d 1336, 1339 (Fed. Cir. 2009) (citing *Micron Tech., Inc. v. United States*, 117 F.3d 1386, 1393 (Fed. Cir. 1997) (quoting *Consol. Edison Co. of N.Y. v. NLRB.*, 305 U.S. 197, 229 (1938))). Thus, a Court must sustain the agency's determination "if it is reasonable and supported by the record as a whole, even if some evidence detracts from the {} conclusion." *See Nippon Steel*, 458 F.3d at 1352 (citation omitted). Even if one can draw two inconsistent conclusions from the evidence contained in the record, this does not mean that Commerce's findings are not supported by substantial evidence. *Id*. (citation omitted); *Consolo v. Federal Maritime Comm'n*, 383 U.S. 607, 620 (1966).

## II.    Titan Tire Failed To Exhaust Its Administrative Remedies In Relation To Its Argument That Commerce May Not Consider Documentation From Entities Other Than The GOI During Its Review

As an initial matter, Titan Tire asserts a new argument that was not raised before Commerce during the review. Titan Tire now argues that Commerce may not consider documentation from entities other than the GOI in determining whether there was an examination of actual inputs. *See* Titan Tire Br., ECF No. 54-2 at 3, 12-13 (arguing that the verification report does not examine actual inputs because "the GOI conducted the verification in 2022—*after* the {period of review}" and that Commerce's "reliance" on BKT's own calculation of its consumption ratios or the reports of outside accountants is misplaced, because under 19 C.F.R. § 351.519(a)(4)(ii) "they do not constitute an examination by 'the government in question.'"). In contrast, the arguments made by Titan Tire in its administrative case brief were that the verification report is unusable because it was (1) a post-hoc review that occurred after the period of review (2) "conducted solely for the purposes of this CVD administrative review," (3) incomplete because "it took place at BKT's ███████████", (4) is "██████████████

██████████████████████████████████" and (5) that the government did not

provide BKT with access to the report. *See* Titan Tire Case Brief at 23-25 (emphasis omitted)

(P.R. 250, C.R. 251). As the documentation argument raised in Titan Tire's motion was not

raised during the administrative stage, it failed to exhaust its administrative remedies, and the

Court should reject these arguments. 28 U.S.C. § 2637(d); *Boomerang Tube LLC v. United

States*, 856 F.3d 908, 912-13 (Fed. Cir. 2017).

   "Exhaustion serves two main purposes{:}" to protect administrative agency authority and

to promote judicial efficiency. *See Stanley Works (Langfang) Fastening Sys. Co., Ltd. v. United

States*, 279 F. Supp. 3d 1172, 1189 (Ct. Int'l Trade 2017) (quoting *Sandvik Steel Co. v. United

States*, 164 F.3d 596, 600 (Fed. Cir. 1998)). There are limited exceptions to this requirement,

none of which are present here. Under the first of these, a pure question of law may excuse a

failure to exhaust if the party raises "a new argument that is of a purely legal nature" that does

not "require further agency involvement, additional fact finding, or opening up of the record"

and does not "create undue delay nor cause expenditure of scarce party time and resources."

*Gerber Food (Yunnan) Co. v. United States*, 601 F. Supp. 2d 1370, 1380 (Ct. Int'l Trade 2009).

Failure to exhaust may also be excused by a lack of access to the confidential record or by an

intervening judicial decision, "which if applied might have materially altered the result." *Id.*

(internal citations omitted). Finally, parties need not exhaust their administrative remedies if

doing so would have been futile, although the exception is a narrow one and "{t}he mere fact

that an adverse decision may have been likely does not excuse a party from a statutory or

regulatory requirement that it exhaust administrative remedies." *Corus Staal BV v. U.S.*, 502

F.3d 1370, 1379 (Fed. Cir. 2007).

Titan Tire may not avail itself of any of these exceptions. The question of whether Commerce properly considered documents that are not from the GOI to evaluate the GOI's verification process requires inquiry into the context of how the documents relate to the verification and what the documents are being used to support. Thus, it is not a pure question of law – further agency involvement would be required. Next, Titan Tire does not cite any intervening legal authorities that would have materially altered the result (nor do any such authorities exist), nor does Titan Tire allege non-access to the confidential record. *See* GOI Supplemental Questionnaire Response (P.R. 184 at 16) ("on being requested by the legal counsel of BKT, the said 'verification report' has been shared by the GOI with BKT'"). Finally, Titan Tire could have raised this argument before Commerce, as Titan Tire submitted other arguments which Commerce fully addressed, and there is no indication Commerce would not have likewise provided reasoned consideration of this issue. *See* Final IDM at 18-20 (P.R. 267).

As Titan Tire did not present this argument at the administrative stage, it has waived the right to do so now. The Court should reject Titan Tire's arguments related to Commerce's ability to utilize record information from sources other than the GOI in its review.

## III.    Commerce's Determination That The AAS Does Not Confer A Benefit To BKT Is Supported By Substantial Evidence And In Accordance With Law

Commerce reasonably determined that BKT did not receive a benefit from the AAS during the period of review because the GOI conducted an actual examination of BKT's inputs to confirm which inputs are consumed in the production of the exported product, and in what amounts, in accordance with 19 C.F.R. § 351.519(a)(4)(ii). As explained above, Commerce's regulations provide that Commerce will not consider an export exemption program to confer a benefit in its entirety, where:

> the government in question has in place and applies a system or procedure to confirm which inputs are consumed in the production of the exported

products and in what amounts, and the system or procedure is reasonable,
effective for the purposes intended, and is based on generally accepted
commercial practices in the country of export{.}

19 C.F.R. § 351.519(a)(4)(i); *see also GGB Bearing Tech. (Suzhou) Co. v. United States*, 279 F.

Supp. 3d 1233, 1241-42 (Ct. Int'l Trade 2017) (relying on whether the government in question

"maintains controls adequate to ensure that any remission or exemption of import duties does not

extend to duties on inputs not consumed in production for export.")  Even where the government

does not have such a system in place, Commerce is also required to find the entirety of the

program does not confer a benefit where "the government in question has carried out an

examination of actual inputs involved to confirm which inputs are consumed in the production of

the exported product, and in what amounts."  19 C.F.R. § 351.519(a)(4)(ii).  This second

exception, and Commerce's application of it, is the basis for Titan Tire's challenge.

The Federal Circuit has not opined on what constitutes an actual examination under 19

C.F.R. § 351.519(a)(4)(ii).  But this Court has held, in the context of Commerce's own

verification procedures, that Commerce has "discretion to determine whether the respondent

fully complied with an information request{.}" *Guizhou Tyre Co., Ltd. v. United States*, 389 F.

Supp. 3d 1315, 1329 (Ct. Int'l Trade 2019) (citing *Helmerich & Payne, Inc. v. United States*, 24

F. Supp. 2d 304, 208 (Ct. Int'l Trade 1998)); *Mannesmannrohren-Werke AG v. United States*, 77

F. Supp. 2d 1302, 1321 (Ct. Int'l Trade 1999) ("Commerce has considerable discretion in

deciding whether a party has sufficiently replied to an information request{.}").

Previously, this Court has upheld Commerce's discretion in finding that an examination

of actual inputs was not conducted by the government in question.  *See Guizhou Tyre Co., Ltd.*,

389 F. Supp. 3d at 1328 (affirming Commerce's determination that there was not an examination

of actual inputs where the government failed to "specifically explain or document how it

13

determined the quantity of {subject merchandise} consumed in the production process”); *Guizhou Tyre Co., Ltd. v. United States*, 348 F. Supp. 3d 1261, 1278-79 (Ct. Int'l Trade 2018) (affirming Commerce's determination that merely describing the consumption process while failing to show that the process was applied had not demonstrated an actual examination of inputs); *and MTZ Polyfilms, Ltd. v. United States*, 659 F. Supp. 2d 1303, 1315 (Ct. Int'l Trade 2009) (upholding Commerce's finding that an actual examination had not occurred because the GOI's review did not cover all standard input output norms in the industry).

Additionally, Commerce has previously found that an examination of actual inputs was not conducted where no information regarding a verification was on the record, the information provided “in the abstract” what the government in question “‘will’ do in a verification,” the report was not provided to Commerce due to the foreign government's confidentiality law, or the verification reviewed “overly inclusive consumption norms” instead of actual inputs. *See Utility Scale Wind Towers From Malaysia: Preliminary Results and Partial Rescission of Countervailing Duty Administrative Review, 2021*, 88 Fed. Reg. 61,516 (Dep't of Commerce Sept. 7, 2023), and accompanying PDM, Decision Memorandum for the Preliminary Results of the Countervailing Duty Administrative Review, 2021: Utility Scale Wind Towers from Malaysia (Dep't of Commerce Aug. 31, 2023); *Utility Scale Wind Towers From Malaysia: Preliminary Results and Partial Rescission of Countervailing Duty Administrative Review, 2022*, 89 Fed. Reg. 74,867 (Dep't of Commerce Sept. 13, 2024), and accompanying PDM, Decision Memorandum for the Preliminary Results of the Countervailing Duty Administrative Review, 2022: Utility Scale Wind Towers from Malaysia (Dep't of Commerce Sept. 6, 2024); *Frozen Warmwater Shrimp From the Socialist Republic of Vietnam: Final Affirmative Countervailing Duty Determination*, 89 Fed. Reg. 85,500 (Dep't of Commerce Oct. 28, 2024), and

accompanying IDM, Issues and Decision Memorandum for the Final Determination of the Countervailing Duty Investigation of Frozen Warmwater Shrimp from the Socialist Republic of Vietnam at 21 (Oct. 21, 2024).

Unlike these other cases, the evidence on the record of this review is not deficient, and supports that the GOI conducted an examination of actual inputs, including a verification report with "numerous specific details concerning BKT (including its personnel and accounting and cost management systems) and the methodology undertaken by the auditors." *Compare* Final IDM at 19-20 (P.R. 267); *with* Investigation IDM at 29-30 (stating "GOI officials at verification could not discuss, or provide sample documentation, of a single "physical check" or audit). Commerce did not find reason to doubt that the report lacked detail, such that it did not represent "an authentic audit" or that the verification was not "conducted according to a reasonable methodology." Final IDM at 19 (P.R. 267). Thus, the GOI's verification report, a signed government document which details relevant verification procedures with specific details, supports Commerce's finding that the GOI conducted an examination of actual inputs. *See* GOI Verification Report (October 13, 2024) (C.R. 77)

Titan Tire argues that the plain language of the regulation requires that the GOI must itself have conducted the examination, and that it must be "substantively meaningful and must cover the actual inputs and consumption during the POR." Titan Tire Br. at 11-15. But Titan Tire fails to demonstrate why its asserted requirements have not been satisfied. Indeed, record evidence demonstrates that the GOI conducted the verification, that the verification included specific details and methodology, and that the verification covered the consumption data associated with Titan Tire's AAS inputs. *See* GOI Verification Report (October 13, 2024) (C.R. 77).

Titan Tire's arguments to the contrary misconstrue the record.  First, Titan Tire argues that "the government itself must conduct the examination" and so Commerce's reliance on "BKT's own calculations of its consumption ratios and determination of wastage rates" is misplaced.  Titan Tire Br. at 11-12 (emphasis omitted).  As explained above, this argument was not raised at the administrative stage and so Commerce was unable to address it through the proper procedure.  This argument also fails on the merits.  Commerce stated,

> the GOI and BKT have placed substantial documentation on the record *confirming the GOI's examination* of BKT, including the GOI's verification report for its verification of BKT's consumption ratios during the POR, the calculations of the ratios themselves — including a determination of wastage rates, examples of deficiency letters issued by the GOI and documents requiring the payment of duties for imports that were not consumed in exported products, and numerous other documents *relevant to the examination*, including the reports of chartered engineers and accountants that conduct additional audits separate from the GOI's audit discussed below.

Final IDM at 18 (P.R. 267) (emphasis added) (internal citations omitted).  All of the documents Commerce described as supporting its conclusion were those examined and relied upon by the GOI; Commerce did not itself rely on BKT's consumption ratios as independent evidence supporting its conclusion.  *Id.*  Moreover, there is nothing in 19 C.F.R. § 351.519(a)(4)(ii) requiring that a government's "examination" rely exclusively on government-generated documents and data.  Thus, Commerce evaluated the GOI's verification report and did not rely on independent data as Titan Tire asserts.

Titan Tire further argues that the GOI did not conduct an actual examination during the period of review (POR) because ███████ the deficiency letters and documents relied on by Commerce ███████████ .  Titan Tire Br. at 12 (emphasis omitted).  Yet, in the next sentence Titan Tire admits that the deficiency letters "also █████ pertain to ████████████████ ████████████████████" *Id.*  The admission that these deficiency letters relate to ██████████████████████ demonstrates why such a letter would need to be sent ████████

██████████████████████████████████.  The two deficiency letters ██████

███████████████████ supporting the reliability of the input norms BKT received under

the program, and which the GOI later verified.  *See* GOI Deficiency Letter 2019 (C.R. 80); GOI

Deficiency Letter 2021 (C.R. 81).  As such, it was reasonable for Commerce to cite these

documents in evaluating the reliability of the GOI's verification.  Titan Tire has not provided any

basis for which to support its assertion that these deficiency letters ██████████████

████████████ were not adequately complied with.  *See id.*

Titan Tire also argues that the only evidence showing that the GOI conducted an

examination of actual data from the POR is the verification report, and that the "GOI conducted

the verification in 2022 — after the POR."  Titan Tire Br. at 13 (emphasis omitted).  Titan Tire

neither explains why it believes a verification after the POR would not be able to "actually"

examine inputs during the POR, nor does it cite to any legal authority stating verification must

occur within the POR.  Indeed, under 19 C.F.R. § 351.307, Commerce's own verifications for its

reviews occur retroactively, once the review has begun and after the POR has ended.

Titan Tire raises several other challenges to the adequacy of the GOI's verification report

and procedures, but these arguments also fail because they have no basis in Commerce's

regulations.  *See* Pl. Br. at 11-14.  Specifically, Titan Tire takes issue with (1) the page length of

the report, (2) the GOI verifiers physically visiting only one factory, and (3) the GOI keeping the

verification report confidential.  *Id.*  There is nothing in the regulation that speaks to *how* the

GOI must conduct its examination.  In the Final IDM, Commerce reasonably explained that (1) it

is the content rather than the page length that makes the report authentic and reasonable

(2) "{a}uditing is often a matter of sampling and does not require that every relevant transaction

be examined or every site be visited{,}" and (3) it is irrelevant whether the government releases

the report to the public and keeping the report confidential does not call into question the adequacy or accuracy of the process.  Final IDM 18-20 (P.R. 267).  Therefore, Commerce properly explained why none of the additional criteria Titan Tire imposes, without legal authority supporting its propositions, contradict the finding that the GOI conducted an actual examination of inputs.

Lastly, although Titan Tire has not challenged Commerce's decision not to conduct a verification in this review, it alludes to this as a reason for why the GOI's verification is insufficient.  *See* Titan Tire Br. at 14 ("Commerce's decision is made even more troubling by the fact that Commerce itself refused to conduct any verification in this review").  Once again, it does not provide any legal authority or analysis to support this contention.  *See id.*; *see also, MTZ Polyfilms, Ltd.*, 659 F. Supp. 2d at 1308 ("{i}ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived.  It is not enough merely to mention a possible argument in the most skeletal way, leaving the court to do counsel's work, create the ossature for the argument, and put flesh on its bones") (quoting *Fujian Lianfu Forestry Co. v. United States*, 638 F. Supp. 2d 1325, 1349 (Ct. Int'l Trade 2009) (citation omitted)).

Commerce explained in the Final IDM that it did not conduct verification because 19 U.S.C. § 1677m(i)(3) and Commerce's prior practice do not require verification unless there have been two administrative reviews without a verification or if good cause has been shown, neither of which applied in the review.  *See* Final IDM at 8.  Moreover, there is no distinct requirement in 19 C.F.R. § 351.519(a)(4) that Commerce verify the procedure or methodology of examination used by foreign governments to confirm the consumption of inputs in the production process.  Indeed, interested parties specifically raised the issue of verification when

Commerce promulgated 19 C.F.R. § 351.519(a)(4),[4] and Commerce declined to incorporate language requiring verification of foreign government procedures. *See Countervailing Duties*, 63 Fed. Reg. 65,348, 65,384-85 (Dep't of Commerce Nov. 25, 1998).

For the foregoing reasons, Commerce's finding that the GOI conducted an examination of actual inputs within the meaning of 19 C.F.R. § 351.519(a)(4)(ii) is supported by substantial evidence and otherwise in accordance with law.

## IV.    Commerce Properly Excluded The AAS *Ad Valorem* Rate From BKT's Rate And Properly Calculated The Non-Selected Rate

Titan Tire raises two additional challenges reiterating its underlying argument regarding the countervailability of AAS, without further substantive argument. Titan Tire argues that (1) BKT's *de minimis* total subsidy rate should be corrected to include the AAS *ad valorem* rate and (2) BKT's recalculated rate should be included in the non-selected subsidy rate. *See* Titan Tire Br. at 15-16.

As to Titan Tire's first argument, Titan Tire agrees that Commerce "calculates the total subsidy rate as the sum of the subsidy rates for each *countervailable* subsidy program." Titan Tire Br. at 15 (citation omitted) (emphasis added); *see also* 19 U.S.C. § 1671(a) (requiring Commerce to apply a CVD rate that is "equal to the amount of the net countervailable subsidy"). Because Commerce determined the AAS does not confer a benefit and is not countervailable, the exclusion of the program from the net subsidy rate was in accordance with law. *See* Section III above; *see also Al Tech Specialty Steel Corp. v. United States*, 28 CIT 1468, 1504 (2004) (holding that where "no benefit was conferred, to countervail that aid would violate both the spirit and the letter of the law.").

---

[4] Titan Tire argues that our position "would render 19 C.F.R. § 351.519(a)(4) irrelevant." Titan Tire Br. at 15 (citing *MTZ Polyfims*, 33 CIT at 1588, 659 F. Supp. 2d at 1315). As discussed above, our position is entirely in accordance with 19 C.F.R. § 351.519(a)(4).

**NONCONFIDENTIAL VERSION**

Moreover, as to Titan Tire's second argument, Titan Tire agrees that "{i}n administrative reviews, Commerce treats any such rate that is less than 0.5 percent as *de minimis*" and that the rate for non-examined companies is calculated as the weighted average of the individually examined companies' rates "excluding rates that are zero, *de minimis*, or based solely on the facts available." Titan Tire Br. at 15-16 (citing 19 C.F.R. § 351.106(c)(1) and 19 U.S.C. § 1671d(c)(5)(A)). The total net subsidy rate of countervailable programs for BKT is 0.32 percent, which is *de minimis*, so Commerce based the non-selected rate on the other respondent's rate in accordance with 19 U.S.C. 1671d(c)(5). *See Amended Final Results* (P.R. 281); Ministerial Error Analysis at 5 (P.R. 280) Thus, as discussed above in Section III, Commerce's exclusion of the *de minimis* rate from the non-selected rate is supported by substantial evidence and otherwise in accordance with law.

## **CONCLUSION**

For these reasons, we respectfully request that this Court sustain Commerce's final results in their entirety and enter final judgment in favor of the United States.

**NONCONFIDENTIAL VERSION**

Respectfully submitted,

BRIAN M. BOYNTON
Principal Deputy Assistant Attorney General

PATRICIA M. McCARTHY
Director

/s/ Franklin E. White, Jr.
FRANKLIN E. WHITE, JR.
Assistant Director

/s/ Brittney M. Welch
DANIELLE COSSEY             BRITTNEY M. WELCH
Of Counsel                  Trial Attorney
                            Department of Justice
U.S. Department of Commerce Civil Division
Office of the Chief Counsel for  Commercial Litigation Branch
Trade Enforcement & Compliance   PO Box 480, Ben Franklin Station
1401 Constitution Ave., NW  Washington, D.C. 20044
Washington, D.C. 20230      Tel.: (202) 616-3753
                            Email: brittney.welch@usdoj.gov

January 6, 2025            Attorneys for Defendant

21

## **CERTIFICATE OF COMPLIANCE**

I hereby certify, pursuant to section 2(B)(1) of the Standard Chambers Procedures of this Court, that this brief contains 6,169 words, excluding the table of contents, table of authorities, any addendum containing statutes, rules or regulations, any certificates of counsel, and counsel's signature, as calculated by the word processing system used to prepare this brief (Microsoft Word).

s/ Brittney Welch
Brittney Welch