Slip Op. 25-112

# UNITED STATES COURT OF INTERNATIONAL TRADE

|  |  |
|---|---|
| TITAN TIRE CORPORATION, <br><br> Plaintiff, <br><br> v. <br><br> UNITED STATES, <br><br> Defendant, <br><br> and <br><br> BALKRISHNA INDUSTRIES LIMITED AND GOVERNMENT OF INDIA, <br><br> Defendant-Intervenors. | Before: Mark A. Barnett, Chief Judge <br> Court No. 23-00233 <br><br> **PUBLIC VERSION** |

### OPINION

[Sustaining the U.S. Department of Commerce's final results in the countervailing duty administrative review on certain new pneumatic off-the-road tires from India.]

Dated: August 22, 2025

Adam H. Gordon, Jennifer M. Smith-Veluz, Benjamin J. Bay, and Kieran O'Connell, The Bristol Group PLLC, of Washington, DC, for Plaintiff Titan Tire Corporation.

Sosun Bae and Brittney Welch, Trial Attorneys, Commercial Litigation Branch, Civil Division, U.S. Department of Justice, of Washington, DC, for Defendant United States. Also on the brief were Brian M. Boynton, Principal Deputy Assistant Attorney General, Patricia M. McCarthy, Director, and Franklin E. White, Jr., Assistant Director. Of counsel on the brief was Danielle Cossey, Attorney, Office of the Chief Counsel for Trade Enforcement and Compliance, U.S. Department of Commerce, of Washington, DC.

John M. Gurley, and William Stroupe II, ArentFox Schiff LLP, of Washington, DC, for Defendant-Intervenors Balkrishna Industries Limited and Government of India. Also on the brief was Tyler Kimberly.

Court No. 23-00233 Page 2

Barnett, Chief Judge: This case arises out of the U.S. Department of Commerce's ("Commerce" or "the agency") final results in the administrative review of the countervailing duty ("CVD") order on certain new pneumatic off-the-road tires ("OTR tires") from India for the period of review ("POR") January 1, 2021, through December 31, 2021. *See Certain New Pneumatic Off-the-Road Tires From India*, 88 Fed. Reg. 68,101 (Dep't Commerce Oct. 3, 2023) (final results of CVD admin. rev.; 2021) ("*Final Results*"), ECF No. 32-4, as amended by *Certain New Pneumatic Off-the-Road Tires From India*, 88 Fed. Reg. 82,828 (Dep't Commerce Nov. 27, 2023) (notice of correction to the final results, and amended final results of CVD admin rev.; 2021) ("*Amended Final Results*"), ECF No. 32-5, and accompanying Issues and Decision Mem., C-533-870 (Sept. 27, 2023) ("I&D Mem."), ECF No. 32-6.[1]

Plaintiff, Titan Tire Corporation ("Titan Tire"), seeks judgment on the agency record pursuant to U.S. Court of International Trade Rule 56.2. Confid. Br. in Supp. of the Rule 56.2 Mot. for J. Upon the Agency R. of Pl. [Titan Tire] ("Pl.'s Br."), ECF No. 60; *see also* Confid. Reply Br. of Pl. [Titan Tire] ("Pl.'s Reply"), ECF No. 75. Defendant United States ("the Government") and Defendant-Intervenors, Balkrishna Industries Limited ("BKT"), an Indian producer of subject merchandise, and the Government of India ("GOI"), urge the court to sustain Commerce's *Final Results*. Confid. Def.'s Resp.

---

[1] The administrative record filed in connection with the *Final Results* is divided into a Public Administrative Record ("PR"), ECF No. 32-1, and a Confidential Administrative Record ("CR"), ECF No. 32-2. The parties submitted joint appendices containing record documents cited in their briefs. *See* Confid. J.A. ("CJA"), ECF No. 77; Public J.A., ECF No. 78. The court references the confidential version of the relevant record documents, unless otherwise specified.

to [Pl.'s] Mot. for J. on the Agency R. ("Def.'s Resp."), ECF No. 62; Confid. Def.-Int. Balkrishna Indus. Ltd.'s Resp. in Opp'n to Pl.'s Rule 56.2 Mot. for J. on the Agency R. ("BKT's Resp."), ECF No. 66; Confid. Def.-Int. Gov't of India's Resp. in Opp'n to Pl.'s Rule 56.2 Mot. for J. on the Agency R. ("GOI's Resp."), ECF No. 68.  For the following reasons, the court sustains the *Final Results*.

### OVERVIEW

At issue in this case is the countervailability of India's Advance Authorization Scheme ("AAS").  The AAS is akin to an advance drawback system whereby a manufacturer in India may be excused, in advance, from paying import charges on inputs that are used to manufacture merchandise that is subsequently exported.  Such a program may be countervailable absent measures to confirm that the inputs excused from import charges are, in fact, used to manufacture exported merchandise.  Pursuant to 19 C.F.R. § 351.519, Commerce considers the entirety of such an exemption to constitute a countervailable benefit unless the government in question has an effective, systemic process for verifying the use of such exempted inputs or has carried out an examination of actual inputs to verify their use.  In this proceeding, Commerce found that India lacks a systemic process to verify use but found that India conducted an examination of actual inputs sufficient for the agency to determine that no benefit was provided in this review.  Titan Tire challenges that finding.

### BACKGROUND

In March 2022, Titan Tire requested an administrative review of twenty-three companies for this POR.  Request for Admin. Rev. (Mar. 31, 2022), PR 2, CJA Tab 1.

Court No. 23-00233                                                                                           Page 4

On May 9, 2022, Commerce initiated an administrative review of the CVD order. *Initiation of Antidumping and Countervailing Duty Admin. Revs.*, 87 Fed. Reg. 29,280, 29,282 (Dep't Commerce May 13, 2022). Commerce selected BKT as a mandatory respondent. Selection of Resp'ts for Individual Examination (Aug. 5, 2022) at 1, CR 6, PR 21, CJA Tab 3.

Commerce published the preliminary results of review on April 5, 2023. *Certain New Pneumatic Off-the-Road Tires From India*, 88 Fed. Reg. 20,125 (Dep't Commerce Apr. 5, 2023) (prelim. results of CVD admin. rev.; 2021) ("*Prelim. Results*"). Commerce found that the GOI had carried out an examination of the actual inputs involved in the production of the exported product for this POR that confirmed, pursuant to 19 C.F.R. § 351.519(a)(4)(ii), the volume of inputs that were consumed by BKT. Dec. Mem. for the Prelim. Results (Mar. 30, 2023) at 18–19, PR 229, CJA Tab 66. Commerce preliminarily calculated a weighted-average *ad valorem* subsidy rate for BKT of one percent. *Prelim. Results*, 88 Fed. Reg. at 20,126.

On November 7, 2023, Commerce published the *Final Results*. For the *Final Results*, Commerce continued to find that the GOI "scrutinized BKT's information in a manner consistent with" 19 C.F.R. § 351.519(a)(4)(ii), and "BKT did not benefit" from the AAS during the POR. I&D Mem. at 20. In the *Final Results*, Commerce calculated a weighted-average *ad valorem* subsidy rate of 0.33 percent (considered *de minimis*) for BKT. 88 Fed. Reg. at 68,102. In the *Amended Final Results*, Commerce corrected BKT's weighted-average *ad valorem* subsidy rate to 0.32 percent (again considered *de minimis*). 88 Fed. Reg. at 82,829.

Court No. 23-00233                                                                                                     Page 5

### JURISDICTION AND STANDARD OF REVIEW

The court has jurisdiction pursuant to section 516A(a)(2)(B)(iii) of the Tariff Act of 1930, as amended, 19 U.S.C. § 1516a(a)(2)(B)(iii) (2018),[2] and 28 U.S.C. § 1581(c). The court will uphold an agency determination that is supported by substantial evidence and otherwise in accordance with law. 19 U.S.C. § 1516a(b)(1)(B)(i).

### DISCUSSION

### I. Parties' Contentions

Titan Tire contends that Commerce's determination that BKT did not benefit from the AAS was not supported by substantial evidence and was not in accordance with law because the GOI did not satisfy the "examination" requirement pursuant to 19 C.F.R. § 351.519(a)(4)(ii). Pl.'s Br. at 11–15. Titan Tire argues that the three-page Verification Report, calculations, and other documents that Commerce relied upon when making its determination reflected "a cursory, *post hoc*, and incomplete 'verification'" by the GOI. *Id.* at 3. Titan Tire also asserts that other documents Commerce relied upon that were not authored by the GOI could not constitute an "examination" conducted by the GOI sufficient to satisfy the regulation. *Id.* Titan Tire further contends that because Commerce incorrectly determined that BKT did not benefit from the AAS, the subsidy

---

[2] All citations to the Tariff Act of 1930, as amended, are to Title 19 of the U.S. Code, and references to the U.S. Code are to the 2018 edition unless otherwise specified.

rate for BKT was not supported by substantial evidence or in accordance with law.  *Id.* at 15.[3]

The Government responds that Commerce's determination that BKT does not benefit from the AAS is supported by substantial evidence and in accordance with law.  Def.'s Resp. at 12–19.  The Government argues that the regulation provides Commerce with discretion when determining whether the government in question conducted an examination of actual inputs.  *Id.* at 13.  The Government also asserts that nothing in the regulation limits Commerce to considering only documents authored by the government in question, *id.* at 16, and that the GOI carried out an examination sufficient to satisfy 19 C.F.R. § 351.519(a)(4)(ii), *id.* at 15.

BKT argues that Titan Tire's interpretation of "an examination of actual inputs involved" pursuant to 19 C.F.R. § 351.519(a)(4)(ii) conflicts with the plain language of the regulation.  BKT's Resp. at 5–9.  The GOI contends that "it maintains a robust and reasonable process" for verification that complies with the regulation, GOI's Resp. at 3, and that the measures undertaken by the GOI were not cursory but, in fact, represent "measures over and above what was necessary" under the regulation, *id.* at 4.

Defendant also argues that Plaintiff failed to exhaust administrative remedies regarding its argument that Commerce should not consider documentation from entities

---

[3] Titan Tire also contends that Commerce should "recalculate the subsidy rate for the non-examined companies using BKT's corrected total subsidy rate."  Pl.'s Br. at 16.  Titan Tire's argument is premised on BKT receiving an above-*de minimis* subsidy rate as a result of this litigation.  *See id.*  Because Commerce's calculation of BKT's *de minimis* total subsidy rate will be sustained, there is no need for any recalculation of the subsidy rate for the non-examined companies.

Court No. 23-00233 Page 7

other than the GOI and that such argument is not a pure question of law. Def.'s Resp. at 10–12; *see also* BKT's Resp. at 3. Titan Tire argues that it was not required to exhaust this argument before the agency because the issue involves a question of law. Pl.'s Reply at 5–8.

## II. Commerce's *Final Results* Will Be Sustained

Titan Tire claims that the GOI's investigation, including its verification, could not be considered "an examination of actual inputs involved to confirm which inputs are consumed" pursuant to 19 C.F.R. § 351.519(a)(4)(ii) because it was incomplete, cursory, and produced solely for purposes of the CVD administrative review. The regulation provides, in relevant part:

> [Commerce] will consider the entire amount of an exemption, deferral, remission or drawback to confer a benefit, unless the [agency] determines that . . . (ii) If the government in question does not have a system or procedure in place, if the system or procedure is not reasonable, or if the system or procedure is instituted and considered reasonable, but is found not to be applied or not to be applied effectively, the government in question has carried out an *examination of actual inputs involved to confirm which inputs are consumed in the production of the exported product, and in what amounts.*

19 C.F.R. § 351.519(a)(4) (emphasis added).

The regulation does not define what constitutes "an examination of actual inputs." *Id.* The regulation also does not specify the exact means to be used by the government in question to conduct the examination. 63 Fed. Reg. at 65,384–85. Nor does the regulation prohibit the government in question from considering documents it did not create, such as information from the producer, when conducting its examination. When considering changes to this regulation, commenters argued for language to be included

in 19 C.F.R. § 351.519(a)(4) that would specify what "system, procedure[,] or methodology of examination to confirm the consumption of inputs" would be sufficient under the regulation. *Countervailing Duties*, 63 Fed. Reg. 65,348, 65,384 (Dep't Commerce Nov. 25, 1998) (final rule) ("*Preamble*"). Commerce rejected these arguments "because any system, regardless of the type, must meet the standards set forth in paragraph (a)(4) in order to be non-countervailable" and Commerce "will examine all such systems carefully to ensure full compliance." *Id.* at 65,384–85.

Commerce based its determination that the GOI carried out an examination of actual inputs on: (1) the GOI's three-page Verification Report, which confirmed BKT's consumption ratios; (2) the calculations of BKT's consumption ratios; (3) deficiency letters from the GOI and other "documents requiring the payment of duties for imports that were not consumed in exported products"; and (4) "numerous other documents relevant to the examination, including the reports of chartered engineers and accountants that conduct additional audits." I&D Mem. at 18. The court will address each basis for the agency's determination in turn.

The Verification Report concluded that the data BKT submitted to the Directorate General of Foreign Trade ("DGFT") [[

]].[4] GOI Initial Questionnaire Resp. Ex. AAS 1 – Verification Rep. (Oct. 3, 2022),

---

[4] The DGFT is the primary regulatory authority of the AAS. It may conduct random, physical checks and audits of any importer, regardless of the importer's AAS status. Investigation Dec. Mem. at 29–30.

CR 77, PR 81, CJA Tab 16.  Commerce found that the Verification Report included "numerous specific details concerning BKT (including its personnel and accounting and cost management systems) and the methodology undertaken by the auditors."  I&D Mem. at 19–20.  While the Verification Report is only three pages long, Commerce determined that its contents represented an authentic audit and verification of the GOI's examination of BKT.  *Id.*  Without identifying any evidence that detracts from Commerce's analysis of the Verification Report, Titan Tire's criticism of the report's length does not call the report into question.

Commerce also found that the GOI examined BKT's consumption ratios and confirmed the calculation of those ratios.  *Id.* at 19.  The calculations included "a determination of wastage rates" that further supported Commerce's conclusion that the GOI conducted an examination of BKT consistent with 19 C.F.R. § 351.519(a)(4)(ii).  *Id.* at 18–19.

Commerce reasonably found that the GOI also considered that the deficiency letters BKT had received from the GOI supported the limitations of the AAS program by demonstrating the possibility of penalties for non-compliance.[5]  *Id.* at 19.  The deficiency letters identified [[

]].  GOI Initial Questionnaire Resp. Ex. AAS 4 – Deficiency Letter (Mar. 25,

---

[5] Commerce also acknowledged that the enforceability of the AAS program helped to explain why the Indian law permits companies to "self-request" audits by the GOI.  I&D Mem. at 19.

2019), CR 80, PR 84, CJA Tab 19; GOI Initial Questionnaire Resp. Ex. AAS 5 – Deficiency Letter (Jan. 23, 2021), CR 81, PR 85, CJA Tab 20.

Finally, Commerce acknowledged that the GOI received the "reports of chartered engineers and accountants that conduct[ed] additional audits separate from the GOI's audit." I&D Mem. at 19. The GOI's receipt and retention of those additional audits supports, rather than detracts, from Commerce's conclusion that the GOI conducted an examination sufficient for purposes of 19 C.F.R. § 351.519(a)(4)(ii).

Titan Tire contends that the plain language of the regulation requires the GOI to have conducted the examination, and that the examination must be "substantively meaningful and must cover the actual inputs and consumption during the POR." Pl.'s Br. at 12. In this case, the record demonstrates that when the GOI examined BKT, it considered BKT's calculations, the deficiency letters the GOI had sent to BKT, and other documents confirming separate audits of BKT. I&D Mem. at 18. The GOI then produced a Verification Report, which Commerce reviewed and found to support a finding that the GOI carried out an examination of the actual inputs involved in BKT's production of OTR tires sufficient for the purposes of 19 C.F.R. § 351.519(a)(4)(ii). *Id.*

Titan Tire disputes the relevance of the deficiency letters and other documents relied upon by the GOI and accepted by Commerce as supporting the GOI's examination. Pl.'s Br. at 12. Titan Tire asserts that because [[

]], they cannot be considered part of the GOI's examination for purposes of the regulation. *Id.* To the contrary, by relying on

these deficiency letters and other documents, the GOI demonstrated that it substantively and meaningfully examined BKT's inputs consistent with the regulation.

Titan Tire further questions the reliability of GOI's verification of BKT by noting that the verification took place after the POR and was limited to only one of three BKT facilities. Pl.'s Br. at 13. The court will not fault Commerce for relying on a government's verification that aligns with Commerce's own practice of verifying data by sampling that data after the period in which it was recorded by the company, and nowhere does Titan Tire cite legal authority suggesting that verification must take place within the POR. Moreover, even though the DGFT visited only one of BKT's three plants, the auditors received electronic access to records from all three plants. *See* GOI Initial Questionnaire Resp. Ex. AAS 1 – Verification Rep. (describing the SAP system). Commerce's own methods for verification do not require the agency to visit every site for every respondent, and nowhere does Titan Tire cite legal authority suggesting that such sampling of data is insufficient.

Titan Tire also disputes the GOI's reliance on documents it did not produce as part of its examination.[6] *See* Pl.'s Br. at 13. This argument is without merit because the examination of actual inputs required by 19 C.F.R. § 351.519(a)(4)(ii) does not prohibit

---

[6] Whether the GOI could consider documents it did not produce pursuant to 19 C.F.R. § 351.519(a)(4)(ii) is argued by Titan Tire as a pure question of law and, to that end, its resolution does not require the agency to conduct additional fact finding. *See Itochu Bldg. Prods. v. United States*, 733 F.3d 1140, 1146 (Fed. Cir. 2013). While the court will not dismiss Titan Tire's argument because it did not exhaust that argument before the agency, the court will reject it because it is without merit. Titan Tire points to no statutory or regulatory provision, or case law, in support of its asserted position.

Court No. 23-00233                                                                                                         Page 12

the government in question from considering documents and data submitted by the respondent as part of its examination.[7]  Commerce's own methods for its countervailing duty and antidumping duty reviews includes reviewing documents and other information created and provided by the respondent and its consultants and counsel.  Titan Tire has offered no basis for the court to question Commerce's acceptance of a GOI examination method comparable to the methods utilized by Commerce to effectuate a similar purpose.

      The record demonstrates that GOI conducted an examination of the actual inputs involved in BKT's production of OTR tires to confirm which inputs were consumed in the production of the exported product and in what quantities.  Titan Tire identifies no evidence that detracts from Commerce's consideration and acceptance of the verification conducted by the GOI.  For these reasons, the court finds that Commerce's determination is supported by substantial evidence and in accordance with law.

---

[7] While Titan Tire cites two cases in support of its position, Pl.'s Br. at 11, both cases are inapposite, see *Guizhou Tyre Co. v. United States*, 43 CIT __, __, 389 F. Supp. 3d 1315, 1328–29 (2019) (affirming Commerce's benefit determination when the government in question lacked adequate controls over the duty exemption program as within Commerce's discretion); *MTZ Polyfilms, Ltd. v. United States*, 33 CIT 1575, 1588, 659 F. Supp. 2d 1303, 1315 (2009) (affirming Commerce's benefit determination when the government in question lacked a reasonable system to confirm the use of exempted imports in exported merchandise and Commerce found that government's examination otherwise inadequate).  In neither case was the government in question's reliance on documents submitted by the respondent discussed.

Court No. 23-00233 Page 13

### CONCLUSION

For the reasons discussed above, the court will sustain Commerce's *Final Results*. Judgment will enter accordingly.

/s/   Mark A. Barnett
Mark A. Barnett, Chief Judge

Dated: August 22, 2025
 New York, New York